IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,              )
                                       )
                     Plaintiff,        )
                                       )
          vs.                          )
                                       )   No. 3:06-cr-0096-HRH
DON ARTHUR WEBSTER, JR.,               )
a/k/a Jerry Starr, a/k/a "Daddy",      )
                                       )
                     Defendant.        )
_____)

O R D E R

Restitution

Defendant was tried and convicted of eleven violations of 18 U.S.C. § 1591 and 21 U.S.C. §§ 841, 851, 856, and 861.[1]  The presentence report prepared by the Probation Service[2] did not address the subject of restitution, and the court therefore determined to defer its decision about restitution.[3]  Defendant was sentenced August 15, 2008, and judgment was entered August 19, 2008, in which a total sentence of 360 months was imposed.[4]

Perhaps because counsel and the Probation Service have had to deal with potentially very large, mandatory restitution obligations so infrequently, development of the information necessary to make

---

[1]Judgment, Docket No. 428.  Defendant was also convicted of sixteen violations of Title 21 drug offenses.

[2]Presentence Investigation Report (filed Aug. 4, 2008) (SEALED), Docket No. 405.

[3]Docket No. 422.

[4]Judgment at 3, Docket No. 428.

- 1 -

a restitution determination in this case did not proceed quickly nor smoothly.[5]  A supplemental presentence report on the subject of restitution was distributed and filed November 26, 2008,[6] and was thereafter supplemented.[7]  In connection with the development of the supplemental presentence reports, the Government served and filed its notice of calculations with respect to restitution and a supplemental memorandum on that subject.[8]  Defendant's objections were filed December 31, 2008.[9]  An evidentiary hearing on the subject of restitution was conducted January 7, 2009.  Thereafter the parties submitted written briefs arguing their respective positions with respect to restitution.[10]  The matter was submitted to the court for a decision March 17, 2009.

The law is very clear and the parties do not disagree that restitution is mandatory in this case based upon the multiple convictions for violations of 18 U.S.C. § 1591.  In this regard, § 1593 expressly provides that:

> (a) Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalties authorized by law, the court <u>shall</u> order restitution for any offense under this chapter.

---

[5]<u>See</u> Order re Restitution Proceedings (Oct. 15, 2008), Docket No. 438, Order re Motion to Strike, Restitution Hearing Vacated(Oct. 24, 2008), Docket No. 450, and Order re Demand for Jury Trial on Restitution (Nov. 7, 2008), Docket No. 458.

[6]Docket No. 463.

[7]Docket No. 470.

[8]Docket Nos. 437 & 468.

[9]Docket No. 469.

[10]Docket Nos. 526, 531 & 533.

18 U.S.C. § 1593(a) (emphasis supplied). Here, the parties disagree as to the amount of restitution to be included in the court's judgment.

Section 1593(b)(1) in substance provides that a restitution order must require "defendant to pay the full amount of the victim's losses[.]"   While there was some evidence received at trial with respect to injuries suffered by victims as well as expenses incurred by the victims for medical attention, that aspect of restitution was neither well developed nor is it the basis for restitution upon which the Government now relies.[11]

The term "full amount of the victim's losses" is defined to encompass more than medical expenses and like, direct losses by the victims.  Section 1593(b)(3) provides:

> (3) As used in this subsection, the term "full amount of the victim's losses" has the same meaning as provided in section 2259(b)(3)[[12]] and shall in addition include the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act....

The Government has presented evidence of the gross income generated by defendant's "escort services" based upon trial testimony and, with the assistance of the United States Department of Labor, has presented evidence of the value of the victims' labor on the basis

---

[11]In fact, a number of the victims received compensation from third-party agencies to assist with medical expenses.

[12]This subsection further defines "full amount of the victim's losses to include six categories of costs that might be incurred by a victim.  As indicated in the text, these costs are not at issue in this case because they have not been developed.

of the Fair Labor Standards Act, 29 U.S.C. § 201, <u>et seq.</u>  On the basis of trial testimony, the Government calculates that defendant's gross revenues from sex trafficking were $3,615,750.00.  The Department of Labor computes the value of the victims' labor as totaling $2,181,763.20.  In mandating restitution, § 1593 requires, as set out above, that the court impose as restitution the "greater" of the two foregoing approaches to valuing the full amount of the victims' losses.  As a consequence, the focus of the parties' briefing is the Government's contention that the judgment in this case should include restitution in the amount of $3,615,750.00.[13]  The calculation proposed by the Government and adopted by the Probation Service also appears in the record as an attachment to the supplemental presentence report.[14]

<u>Discussion and Analysis</u>

While the Government and the Probation Service's restitution calculations are largely self-explanatory, some preliminary comment will perhaps help put the arguments of the parties in focus.  First, there were eleven victims with separate § 1591 convictions as to each.  Some of the victims were minors, and convictions were obtained under the "not attained the age of eighteen years" branch of § 1591(a).  The other victims were adults and defendant was convicted upon the "force, fraud or coercion" branch of § 1591(a).  Most of defendant's arguments have to do with the adult victims.

_____

[13]Notice of Calculations of Mandatory Restitution at 9 (SEALED), Docket No. 437; see attachment at 437-2.

[14]Supplement to Presentence Report at 5 (SEALED) (Nov. 26, 2008), Docket No. 463.

Second, there appears to be little disagreement about the numbers employed in the "days trafficked" column of the restitution calculation.  The "weeks trafficked" column simply reduces the days to weeks by dividing by seven.

Third, with respect to the "days worked per week" column, the Government and presentence report writer have assumed five days per week for each of the victims.  As discussed hereinafter, five days per week is an estimate.

Fourth, in determining the number of sex acts performed by victims on a "work" day, the Government and presentence report writer have adhered as closely as possible to the trial testimony, which was that defendant provided the victims with an "issue" (one gram) of cocaine (usually cocaine base) for each "date" they went on.  At trial, there was a mixture of testimony from victims as to the number of "dates" they regularly performed and/or the number of "issues" they got in return for performing commercial sex and giving substantially all of the money obtained from "customers" to the defendant.

Fifth, the restitution calculation assumes that each victim's rate for a commercial sex act was $150.00.  That is a very conservative estimate for two reasons.  At some ill-defined point in time during defendant's operation of the escort services, the rates charged customers increased from $150.00 plus $20.00 for transportation to $200.00 plus transportation.  Also, the victim (R.S.) who worked for defendant the longest regularly got $400.00 per hour for providing commercial sex.  In addition, M.W. collected

about $400.00 per commercial sex act.  The evidence is clear that $150.00 per hour substantially understates the rates charged by defendant's escort services.

The parties disagree on the subject of proximate causation. By and large, this discussion has to do with situations where restitution is being computed for purposes of addressing victims' personal injuries or losses.  That is not the issue here.  Here, the court is called upon to place a value upon the defendant's gross income for purposes of restitution.  We are not focused upon losses caused by defendant.  No doubt there must be a nexus between sex trafficking and gross income to defendant from the victims' services for purposes of § 1593(b)(3).  Imposing a restitution obligation upon defendant based upon his operation of a clothing store and the gross income from that endeavor would be inappropriate here and in most cases.  Here, there is no basis for doubting that the victims' commercial sex work generated revenue received by defendant.  The question is whether or not the Government's proof is sufficient to support a $3.6 million restitution obligation.

In this case, we have eleven victims.  The presentence report recommends and the Government argues that defendant grossed at least $3.6 million as a result of the victims' services or labor. Defendant argues that in order to impose a restitution obligation upon him, the Government must produce evidence that each dollar of revenue received by defendant from a victim was the result of a commercial sex act.  On the facts of this case, that asks way too

- 6 -

much of the Government.   Such an interpretation of § 1593(b)(3) would permit a defendant to virtually enslave his victims (as was done in this case through the use of force, fear, and drugs), and yet escape a restitution obligation because there are no records of the income received and the memories of the victims as to every single commercial sex transaction are clouded by the passage of time and drug addiction.   Indeed, defendant took advantage of the victims' addiction to cocaine, which he supplied to them apparently without limit in exchange for their labor to keep the victims dependent upon him and working to earn drugs.   The court concludes that § 1593(b)(3) does not obligate the Government to prove by a preponderance of the evidence that each dollar brought to the defendant by a victim was from a consummated act of commercial sex when, as here, it is established by the evidence that the purpose of dispatching victims on "dates" was to provide commercial sex to patrons of the defendant's escort services and that the proceeds were turned over to defendant.

In a related argument, defendant contends that the Government's evidence is insufficient to establish that force or coercion was employed to cause each victim to go on each "date".   Again, defendant would place the bar of proof way too high for purposes of restitution.   It is true that most if not all of the victims were already engaged in prostitution as streetwalkers and were addicted to cocaine when they became acquainted with defendant.   It may not be inaccurate to say that the victims voluntarily went to work for defendant's escort services.   However, once a relationship was

established, defendant kept the victims in line (i.e., going on "dates" to provide clients with sex for money and turning virtually all of the proceeds over to defendant) by means of a complex scheme of brutal force (beatings, strangling, and confinement in a small closet, nude and bound), fear (being certain that other victims saw, joined in, or knew of the violence visited on some victims), and drugs (one gram per "date").  As a result of defendant's physical and substance abuse of the victims, they could not reason-ably be expected to recall, much less articulate, how they felt about going on each "date," how and why they stayed with defendant, and/or returned to him if they left.  What is dispositive here for purposes of restitution is that defendant has been convicted of violations of § 1591 as to each of the eleven victims.  Moreover, defendant's business model was in fact to entice victims with promises of housing and clothes, to brutalize some of the victims, to be sure that others knew of the violence visited upon some of the victims, and to provide virtually unlimited quantities of cocaine to keep victims energized as long as possible.  By culti-vating their addiction and randomly beating and otherwise brutaliz-ing victims, defendant ensured that the victims would remain dependent upon him and incapable of making reasoned choices about going on further "dates".

For purposes of §§ 1591 and 1593, coercion means:

> (2) The term "coercion" means —
>
> ....
>
> (B) any scheme, plan, or pattern intended
> to cause a person to believe that failure to

perform an act would result in serious harm to
or physical restraint against any person....

Defendant seeks to take advantage of his victims' physiological and psychological dependency upon him to argue that the adult victims engaging in commercial sex were not coerced. Defendant has been found guilty of sex trafficking as to all of the adult victims; and as to them, the jury necessarily found that they were forced or coerced into commercial sex trafficking. The jury necessarily found that defendant enticed or otherwise obtained and harbored all of the victims. The jury necessarily found that defendant knew that he was going to use force and coercion to keep the victims engaged in commercial sex. Under the circumstances of this case, the court concludes that, for purposes of quantifying defendant's restitution obligation, it was not necessary for defendant to beat all of the victims nor some of the victims every day in order to force or coerce the victims to continue their association with his escort services and engage in commercial sex for defendant's financial benefit.

What § 1593(b)(3) requires is a showing of defendant's gross income from the victims' services or labor. Based upon the above described business model employed by defendant, the presentence report recommendation estimates the gross income or value to defendant as to each victim from the operation of defendant's escort services. The court must decide whether or not that recom-mendation is reasonable. For purposes of the Mandatory Victims

Restitution Act (MVRA),[15] "[t]o achieve the goal of making crime victims whole ... 'district courts ... engage in an expedient and reasonable restitution process with uncertainties resolved with a view toward achieving fairness to the victim.'" <u>United States v. Berger</u>, 473 F.3d 1080, 1108 (9th Cir. 2007) (quoting <u>United States v. Gordon</u>, 393 F.3d 1044, 1048 (9th Cir. 2004)).  In making that determination, "mathematical precision" is not required under 18 U.S.C. § 2959, nor, by necessary implication, under § 1593.  The court is entitled to make a reasonable estimate with respect to the victims' future expenses.  <u>United States v. Doe</u>, 488 F.3d 1154, 1160 (9th Cir. 2007).  Instead of uncertainty about future expenses, we deal here with uncertainty as to the number of sex trafficking transactions because of the victims' inability to recall by the time of trial the exact details of their prostitution activities while employed by the defendant.  The recommendation of the Probation Service is based upon a fair and reasonable methodology which employed trial testimony for purposes of estimating defendant's gross income from sex trafficking operations in the absence of records.

The court finds that violence, the threat of violence, and the fear associated with violence, coupled with virtually unlimited quantities of cocaine, sufficiently establish for purposes of § 1593(b)(3) the coercive nature of the victims' employment with defendant.  The court finds that the respective estimates of the duration of the victims' employment with defendant, the number of

---

[15]Herein referenced as 18 U.S.C. § 1593.

days worked, and the number of sex acts per day per victim are all reasonable estimates based upon trial testimony.

The court finds that the estimate of $150.00 per commercial sex act potentially leads to a substantial understatement of the gross income derived by defendant from the work of the victims. The trial testimony established that at some undetermined time (but the court infers significantly before the termination of the escort services), the rate to be charged by the victims was increased by defendant from $150.00 to $200.00. Moreover, the rates charged by R.S. and M.W., two of the longest serving employees of the escort services, were more probably than not $400.00 per commercial sex act or more. In addition, the testimony was clear that victims usually collected an additional $20.00 from each customer for "transportation". Offsetting these monetary factors are some additional considerations which are difficult to quantify. The victims did not always turn over all of the money received from customers to defendant. Victims would withhold $20.00 or more on occasion. As already suggested, we do not know when defendant increased the rates to $200.00 per commercial sex act. Thus it is appropriate that the Probation Service recommendation (which the Government endorses) takes the most conservative approach possible to the rates that the victims charged escort service clients and turned over to defendant.

Defendant argues that the recommendation of the Probation Service and the Government is hypothetical or speculative. Defendant correctly points out that "speculative losses are

incompatible with the MVRA's statutory scheme because '[o]ne cannot bear the burden of proving the amount of a loss by a preponderance of the evidence when it is no more than possible that the loss will occur at all' <u>United States v. Follet</u>, 269 F.3d 996, 1002 (9th Cir. 2001)." <u>United States v. Cienfuegos</u>, 462 F.3d 1160, 1168 (9th Cir. 2006).

The recommendation of the Probation Service and the Government is neither hypothetical nor speculative. The jury found and the court believes it is clear beyond a reasonable doubt that all of the victims harbored by defendant were either underage, or forced, and/or coerced into commercial sex transactions. The victims all worked for defendant's escort services and turned over to him substantially all of the money received by them for providing commercial sex. Defendant in fact received large amounts of money from the victims' work for his escort services. There is nothing hypothetical or speculative about those facts. That leaves the court with an obligation to estimate a fair and reasonable amount of defendant's gross income from the victims' services or labor.

The court concludes that $3,615,750.00 is a fair and reasonable estimate of the gross income to the defendant as a result of the victims' services. Because that sum is greater than the Department of Labor estimate of the minimum wages of the victims under the Fair Labor Standards Act, the court will impose $3,615,750.00 as the defendant's restitution obligation.

Title 18, Section 3664, addresses the terms for restitution orders. 18 U.S.C. § 3664(f). The restitution order is to be

"without consideration of the economic circumstances of the defen-
dant."  18 U.S.C. § 3664(f)(1)(A).  The order must ignore any
compensation a victim may have received from insurance or other
sources, 18 U.S.C. § 3664(f)(1)(B), and specify the manner in which
and schedule for the restitution to be paid.  The court considers
the defendant's financial resources, projected earnings, and
financial obligations.  18 U.S.C. § 3664(f)(2).

The supplemental presentence report and second supplemental
report[16] show that defendant has no assets of any immediate value,
and that he has a modest amount of delinquent obligations.
Inasmuch as defendant will be incarcerated for the next thirty
years, the only apparently viable source of funds with which to pay
restitution will be defendant's earnings while incarcerated.
Although the court further finds that it is unlikely that the
defendant will ever have the wherewithal to pay anything more than
a token amount of restitution, it is the ruling of the court that
he shall nevertheless pay restitution in the amount  of one-quarter
of his earnings while incarcerated; and, when and if defendant is
released on supervised release, he shall pay restitution pursuant
to a plan determined by the Probation Service based upon defen-
dant's ability to pay.  If during the term of incarceration or
thereafter defendant shall come into possession or control of any
assets by inheritance or otherwise, the court's restitution
judgment may be enforced and may become a lien on any such property
as provided in 18 U.S.C. § 3664(m).

---

[16]Docket Nos. 463 & 470.

Pursuant to 18 U.S.C. § 3664(i), the court must also address how defendant's restitution payments should be allocated amongst the eleven victims.  This is a subject which the parties have not addressed.  More particularly, this statute provides "for a different payment schedule for each victim based upon the type and amount of each victim's loss and accounting for the economic circumstances of each victim."  The court has no information as to the economic circumstances of any of the victims.  However, the court infers from the trial testimony and its observations of the victims during their testimony that their economic circumstances are not good and probably do not differ significantly.  Again, the court has little useful information about any of the victim's actual losses.  Inasmuch as much as restitution has been ordered on the basis of defendant's gross income from the victims' earnings as prostitutes for the defendant's escort services, the court finds that the most reasonable schedule for the allocation of restitution payments will be a percentage derived from dividing defendant's gross income from trafficking as to each victim by the grand total of trafficking revenues from such trafficking as reflected on the schedule appended to the supplemental presentence report.[17]  In this fashion, M.L. will receive 0.5% of restitution sums paid by the defendant, and J.H. will receive 28%, and the other victims will receive varying percentages according to the schedule below.

The court doubts that any significant amount of restitution will ever be paid in this case.  The court assumes that the victims

---

[17]Supplement to Presentence Report at 5 (SEALED) (Nov. 26, 2008), Docket No. 463.

will become aware of the entry of this restitution order.  The court believes it is only fair that the victims should know that, as discussed above, the defendant's circumstances are such that it is highly unlikely he will ever actually pay any significant amount of restitution.

The court has no doubt that its restitution decision will be appealed.  Indeed, a merits appeal has already been filed in this case.  In the event that the court's restitution decision is reversed on appeal, the court finds that the Department of Labor estimate of the value of the victims' labor under the minimum wage and overtime guarantees of the Fair Labor Standards Act — that is, $2,181,763.20 — a valuation which the defendant has not challenged, shall be the total amount of restitution owed by the defendant pursuant to 18 U.S.C. § 1593(b)(3).

<u>Conclusion</u>

The clerk of court shall enter an amended judgment as follows:

The defendant shall make restitution to the following payees in the total amount of $3,615,750.00, allocated according to the percentages set forth below:

```
H.B.:    11.0%
J.H.:    28.0%
M.L.:    00.5%
A.M.:    03.0%
T.R.:    10.0%
W.R.:    10.0%
A.S.:    00.5%
B.S.:    05.0%
R.S.:    14.0%
M.W.:    17.0%
S.H.:    01.0%
```

- 15 -

The foregoing sum is due and payable as of the date of the amended judgment.

Interest on the restitution amount is waived for lack of ability to pay.

Restitution shall be made as follows:  during defendant's incarceration, 25% of defendant's income shall be applied to restitution and disbursed quarterly; and during the term of supervised release, restitution payments shall commence thirty days after release from imprisonment and shall be made pursuant to a payment plan based upon an assessment by the Probation Service of defendant's ability to pay at the time of release.  Any assets which defendant may acquire from inheritance or otherwise shall be subject to enforcement of the foregoing restitution obligation, which shall become a lien on any such property as provided in 18 U.S.C. § 3664(m).

DATED at Anchorage, Alaska, this <u>1st</u> day of April, 2009.


                                  /s/H. Russel Holland
                                  United States District Judge